USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/17/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x
                              :
ASID MOHAMED, et al.,         :      05 Civ. 8335 (LAP)
                              :
              Plaintiffs,     :      MEMORANDUM AND ORDER
                              :
       v.                     :
                              :
JIBRIL RAJOUB, et al.,        :
                              :
              Defendants.     :
------------------------------x

LORETTA A. PRESKA, U.S.D.J.

On September 27, 2005, the estate, survivors, and heirs of Azzam Rahim ("Plaintiffs") filed this lawsuit for compensatory and punitive damages for the alleged torture and extra-judicial killing of Mr. Rahim. (Compl. ¶ 1.) Their Amended Complaint names as defendants, inter alia, the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") (collectively, "Defendants"). Service was accomplished and, Defendants having failed to respond, this Court ordered entry of default judgment on August 3, 2006. (Aug. 2, 2006 Letter of Robert J. Tolchin).

On June 5, 2007, Messrs. Richard A. Hibey and Mark J. Rochon moved to appear pro hac vice on behalf of Defendants. Upon admission, they intend to move to vacate the default judgment and to dismiss the case as to their clients. (June 14,

1

2007 Letter of Mark J. Rochon). Plaintiffs oppose the pro hac vice motions and cross-moved to require Defendants to post a security bond pursuant to Local Rule 54.2. Oral arguments were held July 17, 2007, and, for the reasons set forth below, the pro hac vice motions are GRANTED and the motion for a security bond is DENIED.

(1)

The decision to admit an attorney to practice pro hac vice rests with the discretion of the Court. See Spanos v. Skouras Theatres Corp., 364 F.2d 161, 167 (2d Cir. 1965); Erbacci, Cerone, and Moriarty, Ltd. v. U.S., 923 F. Supp. 482, 485-86 (S.D.N.Y. 1996). Before a court in this district will admit an attorney pro hac vice, it must have some reasonable assurance that the attorney is familiar with the Federal Rules of Civil Procedure, the Local Rules for the Southern District of New York, this Court's Individual Practices, as well as its customs and practices. See Erbacci, 923 F. Supp. at 485-86. This District's local rules further state:

> A member in good standing of the bar of any state or of any United States District Court may be permitted to argue or try a particular case in whole or in part as counsel or advocate, upon motion and upon filing with the Clerk of the District Court a certificate of the court for each of the states in which the applicant is a member of the bar, which has been issued within thirty (30) days and states that the applicant is

> a member in good standing of the bar of that
> state court. Only an attorney who has been so
> admitted or who is a member of the bar of this
> court may enter appearances for parties, sign
> stipulations or receive payments upon judgments,
> decrees or orders.

Loc. R. 1.3(c).

In this case, there is no dispute that the motions and related papers seeking admission pro hac vice satisfy all the requirements of Local Rule 1.3(c) and Erbacci. Instead, Plaintiffs argue that, because of historic political instability in the areas where the PA exercises authority, evidence should be required to show that the retention of Messrs. Hibey and Rochon was authorized by someone with authority to bind Defendants under Palestinian law. (Pl's Reply Mem. 4.) Plaintiffs argue that, without such a showing, Defendants could theoretically attack the legitimacy of this litigation at some later stage of the proceedings -- for instance, after an adverse ruling -- on the ground that the retention of Mssrs. Hibey and Rochon was not undertaken by legal means. (Pl's Opp'n Mem. 6.) To justify their pessimism, Plaintiffs draw this Court's attention to another litigation -- Gilmore v. Palestine Interim Self Government Authority, 01 Civ. 0853 (D.D.C., filed April 18, 2001) where counsel for the PA mistakenly believed he had authority to litigate the merits of the claims in that case. (Id., Ex. D.) In that case, it appears that counsel for the PA

3

did not clarify the effect filing an answer would have on Defendants' assertion that U.S. courts lack jurisdiction over them, and subsequently counsel withdrew an answer to restore fidelity to that litigation strategy. (Id.) Similar confusion as to the representation in this case, argue Plaintiffs, would waste scarce judicial resources. (Id. at 3.)

In order to demonstrate the validity of their retention, Mssrs. Hibey and Rochon initially submitted a redacted copy of the retention agreement, signed by Mr. Salam Fayyad, then-Finance Minister of the PA. They also submitted a license issued by the Department of the Treasury's Office of Foreign Assets Control authorizing Mssrs. Hibey and Rochon to provide legal assistance to the PA, as required by various regulations. See 31 C.F.R. Pts. 594-95, 597. Additionally, on December 7, 2007, this Court directed Mssrs. Hibey and Rochon to show "by what legal authority Dr. Fayyad is competent to bind the Palestinian Authority and the Palestinian Liberation Organization to this choice of counsel in this matter." In response, they submitted a letter from Mr. Mahmoud Abbas, President of the PA and Chairman of the PLO, stating unequivocally that he authorized Dr. Fayyad to retain counsel to represent the PA and the PLO in U.S. litigation. (Dec. 20, 2007 Letter of Richard Hibey, Ex. A.) Mssrs. Hibey and Rochon also submitted a declaration of Dr. Fayyad, stating that President

4

Abbas had authorized Dr. Fayyad to address pending lawsuits in the United States at the request of Secretary of State Condoleeza Rice and that, to that end, Dr. Fayyad "decided to retain new counsel for the PA and the PLO to handle all of the United States lawsuits, to provide them with clear instructions about their responsibilities and duties with respect to the litigation, and to discharge predecessor counsel." (Id., Ex. B, ¶¶ 10-12.)

Under the circumstances and in light of the submissions presently before the Court, I am satisfied as to the legitimacy of the retention of these lawyers in this case. While their concerns about authorization as a matter of Palestinian law are not entirely without merit, Plaintiffs offer nothing beyond speculation to substantiate them. Even if they could, there is a colorable argument that the retention of Mssrs. Hibey and Rochon should be upheld as a matter of U.S law under agency principles. See Restatement (Third) of Agency §§ 2.03, 2.05 (2006). Accordingly, the pending motions to appear pro hac vice in this case are granted.

(2)

Motion for Security for Costs

Plaintiffs cross-motion that Defendants be required to post a $50,000 security bond seeks to address a different concern --

5

namely, that Defendants will attempt to avoid any outcome this litigation produces. Thus, Plaintiffs point to two other litigations where Defendants have allegedly refused to pay adverse judgments in amounts totaling $308 million. See Ungar v. PLO, PA et al., 402 F.3d 274 (1st Cir. 2005) ($116 million unpaid judgment), cert denied, 546 U.S. 1034 (2005); Knox v. PLO, 229 F.R.D. 65, 70 (S.D.N.Y. 2005) ($192 million unpaid judgment). According to Plaintiffs, the Knox litigation is particularly illustrative of the need for a security in this case. There, the Judge Marrero awarded plaintiff $19,625.30 in attorney's fees as sanction for the PA's and PLO's failure to comply with discovery orders. See Knox, 229 F.R.D. at 71. Through counsel, Defendants refused to pay the sanction in continued belief that the U.S. courts have no authority over the PA or PLO. (Pl's Opp'n Mem., Ex. 1.) Thus, argue Plaintiffs, Defendants' "status as a huge judgment debtor, their demonstrated willingness to waste the time of adversary counsel and the court, their failure to adhere to prior court orders, and their failure to pay sanctions imposed on them by another judge of this Court, all mitigate [sic] in favor of requiring" a security. (Id. at 8.)

Defendants respond that Plaintiff's request for a security bond is facially inadequate because (i) it fails to demonstrate whether Plaintiffs' claims can survive a motion to dismiss, (ii)

6

it fails to allege that Plaintiffs will be entitled to an award of taxable costs, and (iii) it fails to describe the nature and extent of necessary discovery so as to justify the amount of the requested bond. (Def's Opp'n Mem. 2.) Even if Plaintiffs had made such a showing, argue Defendants, the security bond is premature. Instead, the Court should postpone determination of that request until after deciding the motions to vacate and dismiss because the costs incurred to defend those motions will presumably be small (in addition to the costs already incurred) and the claims against Defendants are relatively weak. (Id. at 4.)

Local Rule 54.2 allows a court to "order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate." The primary purpose of the rule is to ensure that "whatever assets a party does possess will not have been dissipated or otherwise have become unreachable by the time such costs actually are awarded." Selletti v. Carey, 173 F.3d 104, 112 (2d Cir. 1999) (emphasis in original). Factors to be considered in determining whether to require a bond include: "(1) the financial condition and ability to pay of the party who would post the bond, (2) whether the party is a non-resident or foreign corporation, (3) the merits of the underlying claims, (4) the extent and scope of discovery, (5) the legal costs expected to be incurred, and (6)

7

compliance with past court orders." RLS Associates, LLC v. United Bank of Kuwait PLC, 464 F. Supp. 2d 206, 220 (S.D.N.Y. 2006); Selletti v. Carey, 173 F.R.D. 96, 100 (S.D.N.Y. 1997). "[T]he amount of the bond lies within the district court's discretion, informed by both legal and equitable considerations," RLS Associates, 464 F. Supp. 2d at 222, and may include attorneys' fees to which a party is potentially entitled by statute, Selletti, 173 F.R.D. at 100.

With respect to the first factor, there is a distinction between willingness to pay and ability to pay. There is nothing on the record to indicate that the PA or the PLO are or will imminently become insolvent, nor is there evidence that either Defendant is attempting to dissipate or otherwise make unavailable assets that it currently has available to pay judgments against it. Thus, this factor does not weigh in favor of a security bond.

With respect to the second factor, it is clear that the Defendants involved are non-residents, and I take that fact into account in my decision. Their absence from the United States, however, weighs in favor of a security bond to a lesser degree than it would otherwise. The Defendants in this case are not lone individuals capable of evading law enforcement; they are entities who represent a settled population located in a fixed geographical location. To the extent that a bond operates as

security against a defendant's possible disappearance, it would appear that these Defendants cannot disappear so easily. Thus, this factor weighs only marginally in favor of a security bond.

With respect to the third factor, and without prejudice to any proceedings or motions hereafter, neither side's argument about the validity of Plaintiffs' underlying claims is so clear as to make this factor weigh heavily. Thus, recognizing that a bond will be more appropriate against a party who brings claims that are questionable on the merits, see Selletti, 173 F.R.D. at 102, the claims and defenses at issue here are not more or less colorable than other litigants' as would justify the imposition of security for costs. This factor, therefore, is rather neutral.

With respect to the fourth factor, Plaintiffs have submitted little to demonstrate the breadth of the discovery needed to prosecute this litigation. Moreover, the Court agrees that very limited discovery will be required to resolve Defendants' motion to vacate and dismiss. Given the suggestion that security for costs may be more appropriate upon resolution of those motions, this factor does not weigh in favor of a security bond at this time.

With respect to the fifth factor, Rule 54 directs that costs other than attorneys' fees should be awarded to a prevailing party in most situations. Otherwise, attorneys' fees

should generally be awarded only upon motion by a party, specifying the basis for the award of fees. See Fed. R. Civ. P. 54(d)(2)(B)(ii). As noted above, a court may include attorneys' fees in its calculation of the appropriate amount of a security bond only if a party is potentially entitled to such an award by statute. Plaintiffs have presented no basis for an award of fees in this case, and therefore would likely be entitled to costs alone if they prevailed. Given the de minimus nature of costs generally, particularly at the motion to dismiss stage, this factor does not weigh in favor of a security bond.

With respect to the final factor, Plaintiffs' evidence about Defendants' prior refusal to comply with court orders, while not dispositive, certainly weighs in favor of requiring a security bond at some point. In light of the other factors, however, how Defendants' prior non-compliance with court orders does not justify a bond at this stage of the litigation. Reconsideration might be appropriate, for example, before full scale discovery is commenced.

Therefore, considering all these factors, I conclude that imposing a security bond on Defendants at this point is unjustified, and, accordingly, Plaintiffs' cross-motion therefor is DENIED without prejudice to renewal.

CONCLUSION

The motions to admit Mssrs. Hibey and Rochon [dkt. 11, 12] are GRANTED, and the motion for a security bond [dkt. 14] is DENIED without prejudice to renewal. The parties shall inform the Court by letter no later than January 23, 2008, how they propose to proceed.

SO ORDERED:

Dated:   January 15, 2008
         New York, New York

*Loretta A. Preska*
LORETTA A. PRESKA, U.S.D.J.